UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————— x

DAIJ, INC. d/b/a GENADEEN CATERERS,          :          Civil Action No. 2:20-cv-02739-JS-SIL
Individually and on Behalf of All Others          :
Similarly Situated,                                          :          <u>CLASS ACTION</u>
                                                                       :
                                      Plaintiff,          :
                                                                       :
                     vs.                                        :
                                                                       :
WESCO INSURANCE COMPANY and          :
AMTRUST FINANCIAL,                                :
                                                                       :
                                      Defendants.          :
                                                                       :

———————————————————— x


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................. 1

    *DAIJ and the Relevant Insurance Contract* ..................................................... 1

    *Relevant Facts* .................................................................................................. 3

III.    ARGUMENT ....................................................................................................... 4

    A.    Standard for Motion to Dismiss ............................................................ 4

    B.    Insurance Policy Interpretation ............................................................. 5

    C.    DAIJ Suffered a Direct Physical Loss .................................................. 6

        1.    Deconstructing Roundabout Theatre .......................................... 6

        2.    Being Unable to Use Property for Its Intended Purpose Constitutes "Loss" ................................................................... 11

        3.    Plaintiff Suffered a "Civil Authority" Loss ............................... 15

    D.    Plaintiff's Claims Are Not Excluded ................................................... 16

        1.    Defendants' Virus Exclusion Does Not Apply to Plaintiff's Claim .......... 16

        2.    Coronavirus Was Not the Cause of Plaintiff's Loss ................... 19

IV.    CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*10012 Holdings, Inc. v. Sentinel Ins. Co.*,
  No. 20 Civ. 4471 (LGS), 2020 WL 7360252
  (S.D.N.Y. Dec. 15, 2020) ................................................................................6, 14, 15

*67 Wall St. Co. v. Franklin Nat'l Bank*,
  37 N.Y.2d 245 (1975) ................................................................................18

*Advance Cable Co., LLC v. Cincinnati Ins. Co.*,
  788 F.3d 743 (7th Cir. 2015) ................................................................................12

*Album Realty Corp. v. Am. Home Assurance Co.*,
  80 N.Y.2d 1008 (1992) ................................................................................19, 20

*Bd. of Educ., Yonkers City Sch. Dist. v. CNA Ins. Co.*,
  647 F. Supp. 1495 (S.D.N.Y. 1986) ................................................................................5, 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................4

*Belt Painting Corp. v. TIG Ins. Co.*,
  100 N.Y.2d 377 (2003) ................................................................................5

*Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*,
  10 N.Y.3d 187 (2008) ................................................................................5

*Bros., Inc. v Liberty Mut. Fire Ins. Co.*,
  268 A.2d 611 (D.C. 1970) ................................................................................16

*Burlington Ins. Co. v. NYC Transit Auth.*,
  29 N.Y.3d 313 (2017) ................................................................................6, 7, 14

*Cataract Sports & Ent. Grp., LLC v. Essex Ins. Co.*,
  59 A.D.3d 1083 (4th Dep't 2009) ................................................................................7

*Cohen v. Rosicki, Rosicki & Assocs., P.C.*,
  897 F.3d 75 (2d Cir. 2018) ................................................................................5

*Coutu v. Exch. Ins. Co.*,
  174 A.D.2d 241 (3rd Dep't 1992) ................................................................................7

*CT Inv. Mgmt. Co. v. Chartis Specialty Ins. Co.*,
  9 N.Y.S.3d 220 (1st Dep't 2015) ................................................................................16, 17

**Page**

*Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C.*,
   226 N.J. 403 (N.J. 2016) ....................................................................19

*Dean v. Tower Ins. Co. of N.Y.*,
   19 N.Y.3d 704 (2012) ....................................................................5, 6

*Gil v. Clara Maass Med. Ctr.*,
   450 N.J. Super. 368 (App. Div. 2017) ......................................17

*Gravino v. Allstate Ins. Co.*,
   902 N.Y.S.2d 725 (4th Dep't 2010)......................................19, 20

*Greenberg v. Privilege Underwriters Reciprocal Exch.*,
   93 N.Y.S.3d 686 (2d Dep't 2019) ............................................19

*Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*,
   No. 2:12-cv-04418 (WHW) (CLW), 2014 WL 6675934
   (D.N.J. Nov. 25, 2014) ..............................................................12

*Harry's Cadillac-Pontiac-GMC Truck Co., v. Motors Ins. Corp.*,
   126 N.C.App. 698 (N.C. Ct. App. 1997) ....................................9

*Henderson Rd. Rest. Sys., Inc. v. Zurich Am. Ins. Co.*,
   No. 1:20CV1239; 2021 WL 168422,
   (N.D. Ohio. Jan. 19, 2021)........................................................11

*Home Ins. Co. v. Am. Ins. Co.*,
   537 N.Y.S.2d 516 (1st Dep't 1989) ..........................................20

*Howard Stores Corp. v. Foremost Ins. Co.*,
   82 A.D.2d 398 (1st Dep't 1981), *aff'd*, 56 N.Y.2d 991 (1982) ................9

*Hughes v. Potomac Ins. Co. of D.C.*,
   199 Cal. App. 2d 239 (1962) ..............................................12, 13

*In re Northern Telecom Ltd. Sec. Litig.*,
   42 F. Supp. 2d 234 (S.D.N.Y. 1998).........................................14

*In re Vanguard Ins. Co. (Polchlopek)*,
   18 N.Y.2d 376 (1966) ..............................................................16

*In re Viking Pump, Inc.*,
   27 N.Y.3d 244 (2016) ..............................................................6, 7

**Page**

*Manpower Inc. v. Ins. Co. of the State of Pa.*,
   No. 08C0085, 2009 WL 3738099
   (E.D. Wis. Nov. 3, 2009) .................................................................................................11

*Michael Cetta, Inc. v. Admiral Indem. Co.*,
   No. 20 Civ. 4612 (JPC), 2020 WL 7321405
   (S.D.N.Y. Dec. 11, 2020).............................................................................................6, 14

*Mooney v. AXA Advisors, L.L.C.*,
   19 F. Supp. 3d 486 (S.D.N.Y. 2014)..........................................................................18, 19

*Murdock v. Gould*,
   193 N.Y. 369 (1908) ...........................................................................................................19

*Murray v. State Farm Fire & Cas. Co.*,
   203 W. Va. 477 (W. Va. 1998) .........................................................................................12

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,
   17 F. Supp. 3d 323 (S.D.N.Y. 2014)........................................................................ *passim*

*O'Donnell v. AXA Equitable Life Ins. Co.*,
   887 F.3d 124 (2d Cir. 2018)............................................................................................4, 5

*Pahuta v. Massey-Ferguson, Inc.*,
   170 F.3d 125 (2d Cir. 1999)..................................................................................................8

*Panayoty v. Annucci*,
   898 F. Supp. 2d 469 (N.D.N.Y. 2012) ............................................................................14

*Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*,
   472 F.3d 33 (2d Cir. 2006)................................................................................................20

*Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*,
   311 F.3d 226 (3d Cir. 2002)........................................................................................12, 14

*Propis v. Fireman's Fund Ins. Co.*,
   112 A.D.2d 734 (4th Dep't 1985), *aff'd*, 66 N.Y.2d 828 (1985).....................................7, 8, 14

*Roundabout Theatre Co. v. Continental Cas. Co.*,
   302 A.D.2d 1 (1st Dep't 2002) ................................................................................ *passim*

*Studio 417, Inc., v. Cincinnati Ins. Co.*,
   No. 20-cv-03127-SRB, 2020 WL 4692385
   (W.D. Mo. Aug. 12, 2020)...........................................................................................11, 12

**Page**

*Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*,
No. CV 17-04908, 2018 WL 3829767
(C.D. Cal. July 11, 2018) ...................................................................................13

*U.S. Fire Ins. Co. v. J.S.U.B., Inc.*,
979 So. 2d 871 (Fla. 2007)...............................................................................19

*United Air Lines, Inc. v. Ins. Co. of State of Pa.*,
439 F.3d 128 (2d Cir. 2006)........................................................................15, 16

*Urogynecology Specialist of Fl. LLC v. Sentinel Ins. Co.*,
No. 6:20-cv-1174-Orl-22EJK, 2020 WL 5939172
(M.D. Fla. Sept. 24, 2020) .................................................................................18

*W. Fire Ins. Co. v. First Presbyterian Church*,
165 Colo. 34 (Colo. 1968) .........................................................................12, 13

*Westview Assocs. v. Guar. Nat'l Ins. Co.*,
95 N.Y.2d 334 (2000) ..................................................................................5, 6, 7

Federal Rules of Civil Procedure
Rule 8(a)(2)..........................................................................................................4
Rule 12(b)(6)...............................................................................................1, 4, 15

## OTHER

AMTRUST FINANCIAL. *AmTrust North America insurance carriers*,
https://amtrustfinancial.com/about-us/insurance-carriers
(last visited Jan. 25, 2021) ...................................................................................2

*Law Insider,* https://www.lawinsider.com/dictionary/untenantable#:~:text=Untenantable%
20means%20that%20the%20Premises%20or%20a%20material%20portion%20of,
Tenant%20for%20the%20Permitted%20Use
(last visited on Jan. 19, 2021) ..............................................................................2

*Merriam-Webster*, https://www.merriam-webster.com/dictionary/damage
(last updated Jan. 11, 2021) .................................................................................8

## I.     INTRODUCTION

Plaintiff DAIJ, Inc. d/b/a Genadeen Caterers' ("Plaintiff") Class Action Complaint ("Complaint") (ECF No. 1) sufficiently alleges facts and policy terms to support its claims for breach of contract and declaratory judgment against Defendants.  The Complaint alleges that the Closure Orders (defined below) caused "direct physical loss of" insured property in the form of suspension of its business operations.  Defendants' Motion is premised on the interpretation that "loss of" property requires "physical damage to" property – despite the fact that the relevant words are undefined in the insurance policy issued to DAIJ.  Coverage under the insurance policy, and in turn Defendants' Motion, turns on the plain and ordinary meaning of the words: "direct physical loss of or damage to."  Defendants misconstrue the Policy coverage requirements and rely on a misapplication of New York law and incorrectly decided opinions.  As detailed below, a reasoned analysis of the contractual terms and applicable case law supports Plaintiff's claims because a "physical loss of" property does not require physical alteration to the property.  Defendants' Motion should, therefore, be denied.

## II.    FACTUAL BACKGROUND

### DAIJ and the Relevant Insurance Contract

Plaintiff owns and operates an event planning and catering service and is the exclusive caterer to The Sephardic Temple in Cedarhurst, New York.[1]  Plaintiff purchased insurance from Defendants Wesco Insurance Company and AmTrust Financial[2] ("Defendants") covering Plaintiff's property (the "Policy"), which provided:

---

[1]     "¶" and "¶¶" refer to the Class Action Complaint, filed on June 19, 2020. *See* ECF No. 1.  Defendants' Motion to Dismiss the Complaint Under Rule 12(b)(6) is referred to herein as "Br." and the Exhibit attached thereto is referred to herein as "Defs.' Ex. A."  *See* ECF No. 23.

[2]     Defendants claim that "AFSI [AmTrust Financials Services, Inc.] is not a party to, and did not issue, DAIJ's insurance policy" without any supporting documentation.  Br. at 5.  Pending evidence that indicates otherwise, Plaintiff maintains that Amtrust Financial is a party to this litigation.  Defendants' website states on a page entitled "AmTrust

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

¶37. "Suspension" is defined in the Policy to mean "[t]he slowdown or cessation of your business activities; *or* [t]hat a part or all of the described premises is rendered untenantable." Defs.' Ex. A at WESCO_000161.[3] "Untenantable" is not specifically defined in the Policy, but means, in the legal sense of the word, that "[p]remises or a material portion of the Premises *is not reasonably capable of use* and occupancy, *and is not, in fact, used* or occupied, by Tenant *for the Permitted Use*."[4] "Operations" under the Policy means "[y]our business activities occurring at the described premises; and [t]he tenantability of the described premises." Defs.' Ex. A at WESCO_000161. "Period of restoration" under the Policy means "the period of time that[] [b]egins[] 72 hours after the time of direct physical loss or damage for Business Income Coverage; or [i]mmediately after the time of direct physical loss or damage for Extra Expense Coverage[] caused by or resulting from any Covered Cause of Loss at the described premises." *Id.* "Covered Cause of Loss" under

---

North America insurance carriers" that "[t]he following affiliated property and casualty insurance carriers provide coverages for AmTrust. . . . Wesco Insurance Company." *See* AMTRUST FINANCIAL. *AmTrust North America insurance carriers*, https://amtrustfinancial.com/about-us/insurance-carriers (last visited Jan. 25, 2021).

What is more, "AmTrust Financial" heads the front page of the denial letter sent to Plaintiff on March 18, 2020 (*see* Ex. A at 1.) and "AmTrust North America, An AmTrust Financial Company" heads page 2 of the denial letter and is inscribed on the front page of the Policy itself. *Id.* at 2; Defs.' Ex. A at WESCO_000001.

[3]   Emphasis herein is added, unless specified otherwise.

[4]   *See Law Insider*,
https://www.lawinsider.com/dictionary/untenantable#:~:text=Untenantable%20means%20that%20the%20Premises%20or%20a%20material%20portion%20of,Tenant%20for%20the%20Permitted%20Use (last visited on Jan. 19, 2021).

- 2 -

the Policy means "direct physical loss unless the loss is excluded or limited in this policy." *Id.* at

WESCO_000173.

The Policy also contained an endorsement that provided:

We will not pay for loss or damage caused by or resulting from any virus, bacterium or micro-organism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

¶39.

Defendants' Policy also included a "Civil Authority" provision:

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property;

and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Defs.' Ex. A at WESCO_000154.

### *Relevant Facts*

In mid-March 2020, the State of New York and New York City, as well as other states and

localities, issued orders closing all non-essential businesses and limited restaurants to take-out or

delivery service only (the "Closure Orders") to attempt to limit the spread of COVID-19.  As a

result of the Closure Orders, Plaintiff was, at times, forced to close completely and, at other times, was limited to take-out service.  Notwithstanding that DAIJ's business had been interrupted by a covered event, Defendants denied coverage (the "Denial Letter"), claiming that Plaintiff's policy "does <u>not</u> provide coverage for loss or damage which may be caused by or results from coronavirus, including claims for loss of business income" and that "coronavirus does not constitute physical damage to [Plaintiff's] property."[5]  The Denial Letter further claimed that Plaintiff's policy excludes coverage for loss of business income from "an action by a civil authority that prevents [Plaintiff] from accessing [its] property" and excludes damage "caused by or resulting from any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease."[6]

Thereafter, this litigation ensued.  Defendants have moved to dismiss Plaintiff's Complaint, raising a number of different arguments as to why Plaintiff's losses are not covered.  For the reasons set forth below, Defendants' motion should be denied.  Plaintiff has suffered a covered "loss" that is not excluded under the Policy, namely its use of the covered property.

## III.   ARGUMENT

### A.   Standard for Motion to Dismiss

A complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide a defendant with "fair notice" of the claim and the basis for it.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In connection with a Rule 12(b)(6) motion, all well-pleaded facts are accepted as true and all reasonable inferences are drawn in the plaintiff's favor.  *See, e.g.*, *O'Donnell v. AXA Equitable*

---

[5]   Ex. A at 1.

[6]   *Id.*

*Life Ins. Co.*, 887 F.3d 124, 128 (2d Cir. 2018).  To survive a motion to dismiss, a complaint must

contain sufficient factual matter to state a claim to relief that is plausible on its face.  *Cohen v.*

*Rosicki, Rosicki & Assocs.*, *P.C.*, 897 F.3d 75, 80 (2d Cir. 2018).[7]

### B.    Insurance Policy Interpretation

Under New York insurance law, an insurance policy is construed "in light of 'common

speech' and the reasonable expectations of a businessperson."  *Belt Painting Corp. v. TIG Ins. Co.*,

100 N.Y.2d 377, 383 (2003).  "[B]usiness policyholders . . . lack the resources to continue business

operations without insurance proceeds."  *Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10

N.Y.3d 187, 195 (2008).  Accordingly, "[t]he purpose served by business interruption coverage

cannot be clearer—to ensure that [the insured] ha[s] the financial support necessary to sustain its

business operation in the event disaster occur[s]."  *Id.* at 194.

"[B]efore an insurance company is permitted to avoid policy coverage, it must satisfy the

burden which it bears of establishing that the exclusions or exemptions apply in the particular case,

and that they are subject to no other reasonable interpretation."  *Dean v. Tower Ins. Co. of N.Y.*,

19 N.Y.3d 704, 708 (2012).  Exclusions must be specific and cannot be extended by interpretation

or implication.  *Westview Assocs. v. Guar. Nat'l Ins. Co.*, 95 N.Y.2d 334, 338 (2000).  Where there

is a repugnancy between general and specific provisions, the special provisions control over the

general ones.  *Bd. of Educ., Yonkers City Sch. Dist. v. CNA Ins. Co.*, 647 F. Supp. 1495, 1504

(S.D.N.Y. 1986).  Likewise, where an insurance policy contains conflicting clauses, the one which

affords greater or more inclusive coverage will govern.  *Id.*

---

[7]    A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it
by reference, or documents that are integral to the complaint.  *Id.*

Insurance policies must be interpreted in a manner that gives them full force and effect and does not render any provisions meaningless,[8] with any ambiguities to be construed against the insurer. *Id.*; *Dean*, 19 N.Y.3d at 708.  If an insurance policy contains conflicting clauses, the one which affords greater or more inclusive coverage will govern.  *CNA*, 647 F. Supp. at 1504.

### C.    DAIJ Suffered a Direct Physical Loss

Defendants principally rely upon *Roundabout Theatre Co. v. Continental Casualty Co.*, 302 A.D.2d 1 (1st Dep't 2002) and subsequent decisions which relied on the same incorrect reasoning as in *Roundabout Theatre*.[9]  Br. at 5-7.  Defendants argue that *Roundabout Theatre* is the controlling authority with respect to the Plaintiff's claims.  However, *Roundabout Theatre* is contrary to well-settled New York insurance law as enunciated by the Court of Appeals, which the Court is bound to follow.

### 1.    Deconstructing Roundabout Theatre

In *Roundabout Theatre*, the insured's policy covered "direct physical loss or damage" to the property described in the policy.  An exterior construction elevator collapsed into the street.  It caused only minor damage to the theater, but because of the collapse, 43rd Street was closed for nearly a month, causing the theater to cancel 35 performances of *Cabaret*.  302 A.D.2d at 2.  The theater submitted a claim to its insurance broker for the lost revenue under its business interruption coverage.  Continental Insurance denied coverage because it claimed there was no "physical damage" to the property.  The theater then sued the broker that had obtained the policy for negligence for failing to obtain coverage for off-site property damage.  *Id.* at 4.  The theater and

---

[8]    *See Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.3d 313, 322 (2017).  As a rule, "'surplusage [is] a result to be avoided[.]'"  *In re Viking Pump, Inc.*, 27 N.Y.3d 244, 257 (2016), quoting *Westview Assocs.*, 95 NY2d at 339.

[9]    *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323 (S.D.N.Y. 2014); *see also 10012 Holdings, Inc. v. Sentinel Ins. Co*., No. 20 Civ. 4471 (LGS), 2020 WL 7360252 (S.D.N.Y. Dec. 15, 2020); *Michael Cetta, Inc. v. Admiral Indem. Co.*, No. 20 Civ. 4612 (JPC), 2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020).

the broker reached a settlement whereby the broker paid nearly $1 million to the theater in exchange for an assignment of the theater's rights against Continental Insurance to the broker. *Id.* The broker in turn sued Continental Insurance. *Id.* The trial court subsequently granted summary judgment in favor of the plaintiff and Continental appealed. *Id.* at 4-6.

The Appellate Division reversed this decision, holding that the language in the policy covering "direct physical loss or damage to" the insured's property required that there be some physical damage to the insured's property. *Id.* at 7. The court then discussed other portions of the policy that purported to support its position, and distinguished or rejected contrary authority cited by the plaintiffs. *Id.* at 7-9. The court also noted that it was the theater's (*i.e.*, the insured's) position in its suit against the broker that the loss was not covered. *Id.* at 8-10.

The holding in *Roundabout Theatre* is contrary to well-settled principles of insurance policy interpretation under New York law as enunciated by the Court of Appeals. First, policies should not be interpreted to make words meaningless. *See, e.g.*, *Burlington*, 29 N.Y.3d at 323; *Viking Pump*, 27 N.Y.3d at 257 ("Significantly, 'surplusage [is] a result to be avoided.'") (quoting *Westview Assocs.*, 95 N.Y.2d at 338). In addition, words separated by the conjunctive "or" are interpreted as having different referents. *See Propis v. Fireman's Fund Ins. Co.*, 112 A.D.2d 734, 736-37 (4th Dep't 1985), *aff'd*, 66 N.Y.2d 828 (1985); *Coutu v. Exch. Ins. Co.*, 174 A.D.2d 241, 243 (3rd Dep't 1992) ("Because the words 'vacant or unoccupied' are stated in the disjunctive, the words must be separately considered[.]"); *Cataract Sports & Ent. Grp., LLC v. Essex Ins. Co.*, 59 A.D.3d 1083, 1084 (4th Dep't 2009) ("Because the policy identifies the insured premises in the disjunctive, each must be separately considered and either would support coverage[.]").[10]

---

[10]   The fact that the Court of Appeals in *Propis* affirmed the Appellate Division for the reasons stated in the Appellate Division's opinion is conclusive evidence as to the Court of Appeals' view on this issue. The Appellate Division

Putting these two well-established concepts endorsed by the New York Court of Appeals together, the *Roundabout Theatre* court's reading of the policy was plainly incorrect.  The policy there covered "loss of, damage to, or destruction of" property and "direct physical loss or damage to" property. 302 A.D.2d at 5, 7.  The *Roundabout Theatre* court held that this language required that there be some physical damage to the property.  This reads "loss" and "damage" as synonymous.  However, since "loss" and "damage" are separated by the disjunctive "or," under New York law, they necessarily must be different.  Since "loss" and "damage" are necessarily different, reading them as the *Roundabout Theatre* court did created surplusage in the policy.  If "loss" and "damage" are synonymous, as posited by the *Roundabout Theatre* court, "loss" is redundant surplusage, contrary to New York law as enunciated by the Court of Appeals.  In essence, the *Roundabout Theatre* court read the policy as "direct physical damage of or damage to" the insured's property, which makes no sense at all.

That "loss" does not require physical damage is made clear by the coverage language "direct physical loss of or damage to property."  ¶37.  "Damage" means "loss or harm resulting from injury to person, property, or reputation."[11]  "Damage" under the Policy thus means "harm resulting from injury to property."  Therefore, "loss" must either be something other than harm to the property, or it is surplusage.

In addition, the authorities the *Roundabout Theatre* court purported to rely on simply do not support the conclusion that "physical loss or damage" requires some damage to the property.

---

decisions that rely upon *Propis*, as well as other cases, are equally binding on this Court.  *See Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999).

[11]   *Merriam-Webster*, https://www.merriam-webster.com/dictionary/damage (last updated Jan. 11, 2021).

*See Roundabout Theatre*, 302 A.D.2d at 7.[12]   *First*, In *Howard Stores*, the insured *did* suffer physical damage.  It suffered water damage to its inventory, which was duly paid by the insurer. 82 A.D.2d at 398.  The subject of the lawsuit was the insured's claim for business interruption coverage, which was denied because the insured had never suspended its operations as a result of the damage, and, in fact, had increased its business.  *Id.* at 400.  Thus, in *Howard Stores*, the claim was denied *not* because the property did not suffer physical damage but because the insured's business was not interrupted as a result of the damage.  *Second*, *Harry's Cadillac*, was incorrectly decided.  There, the insured sought business interruption coverage for being closed as a result of a snowstorm.  Notwithstanding the fact that the insured's policy covered business interruptions "caused by direct physical loss of or damage to property at the premises," 126 N.C. App. at 700, the court read the policy as requiring the loss to be "due to damage to or the destruction of the property[.]"  *Id.* at 702.  The language that the court used as the basis of its decision was completely different than the language contained in the insured's policy.

The last authority cited by the *Roundabout Theatre* court was 11 Couch on Insurance §167:15, which relates to "[c]urfews and other actions of civil authorities absent physical damage to property."  That section of Couch does make the general statement that business interruption coverage *generally* requires some physical damage to property, losses due to curfew are usually not covered, but recognizes in some instances the coverage would *not* require physical damage. Indeed, in the section of Couch discussing business interruption coverage generally, the treatise recognizes that there are instances where an insured can suffer loss or damage in the absence of physical alteration of the property, as happened here:

---

[12]   *E.g.*, *Howard Stores Corp. v. Foremost Ins. Co.*, 82 A.D.2d 398 (1st Dep't 1981), *aff'd*, 56 N.Y.2d 991 (1982); *Harry's Cadillac-Pontiac-GMC Truck Co., v. Motors Ins. Corp.*, 126 N.C.App. 698 (N.C. Ct. App. 1997).

The opposite result has been reached, allowing coverage based on physical damage despite the lack of physical alteration of the property, on the theory that the uninhabitability of the property was due to the fact that gasoline vapors from adjacent property had infiltrated and saturated the insured building, and the theory that the threatened physical damage to the insured building from a covered peril essentially triggers the insured's obligation to mitigate the impending loss by undertaking some hardship and expense to safeguard the insured premises.

These cases present difficult analytical challenges to courts seeking a result that comports with the parties' agreement.  Why should a property insurer be responsible when gasoline fumes permeate the premises but not when there is asbestos in the building?  One good argument for this seeming discrepancy is that the asbestos was presumably put there deliberately, as part of the normal building and construction process, and, as such, is considerably less fortuitous than fumes from gasoline that has strayed onto the insured premises from property owned and controlled by another.  The fortuity concept is, of course, a foundational concept in insurance law, and the fortuitous leaking of gasoline is much closer to the classic "random risk" that insurers are in the business of assessing than is the concealed but intentional presence of asbestos.

Couch on Insurance, §148.46 (3d Ed. 2020) (footnotes omitted).

In sum, the application of New York insurance policy interpretation rules demonstrates that *Roundabout Theatre*'s interpretation that "loss or damage" requires damage to the property is demonstrably incorrect and contrary to law.  *Roundabout Theatre* is the tent pole that supports the decisions in *Newman Myers*, 17 F. Supp. 3d at 330 ("More apposite is New York case authority, and it favors the insurer here.  Most germane is *Roundabout Theatre Co.*, *supra*.") and *Social Life Magazine Inc. v. Sentinel Insurance Co.*, No. 1:20-cv-03311-VEC (S.D.N.Y. May 22, 2020).[13]  Without *Roundabout Theatre*, *Newman Myers* and *Social Life Magazine* fall flat as well. There is no viable support under New York law that "loss" of property requires that the property be damaged, so, as a practical matter, the court is writing on a clean slate.

---

[13]     *Social Life Magazine* is easily distinguishable on the facts in any event.  There, the insured contended that a coronavirus infestation had caused damage to the insured's property, and that evidence of the infestation was the owner had become ill with COVID-19.  The court noted that the fact that the owner had become ill was not evidence that there was coronavirus in the insured's property, and the virus had made no change in the property.

### 2. Being Unable to Use Property for Its Intended Purpose Constitutes "Loss"

Based upon generally applicable insurance policy rules, that are in accord with New York law, "physical loss of" is something different than "physical damage to" when they are joined by the disjunctive "or."

> As noted, the policy covered physical losses in addition to physical damage, and if a physical loss could not occur without physical damage, then the policy would contain surplus language. However, a contract must, where possible, be interpreted so as to give reasonable meaning to each provision without rendering any portion superfluous. Thus, "direct physical loss" must mean something other than "direct physical damage." Indeed, if "direct physical loss" required physical damage, the policy would not cover theft, since one can steal property without physically damaging it.

*Manpower Inc. v. Ins. Co. of the State of Penn.*, No. 08C0085, 2009 WL 3738099, at *5 (E.D. Wis. Nov. 3, 2009); *see also Studio 417, Inc., v. Cincinnati Ins. Co.*, No. 20-cv-03127-SRB, 2020 WL 4692385, at *5 (W.D. Mo. Aug. 12, 2020) ("Defendant conflates 'loss' and 'damage' in support of its argument that the Policies require a tangible, physical alteration. However, the Court must give meaning to both terms."); *Henderson Rd. Rest. Sys., Inc. v. Zurich Am. Ins. Co.*, No. 1:20CV1239; 2021 WL 168422, at *10 (N.D. Ohio. Jan. 19, 2021) ("Plaintiffs argue that physical loss *of* the real property means something different than damage to the real property, and this is a valid argument. Otherwise, why would both phrases appear side-by-side separated by the disjunctive conjunction 'or'? Plaintiffs argue that they lost their real property when the state governments ordered that the properties could no longer be used for their intended purposes – as dine-in restaurants. The Policy's language *is* susceptible to this interpretation.") (emphasis in original).

The Third Circuit, interpreting New York law, has held that it is not necessary for there to be a physical change in the property for there to be a "physical loss;"[14] it is enough that the property cannot be used for its intended purpose. *See Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (applying N.Y. and N.J. law).[15]  For example, in *Gregory Packaging*, there was an ammonia leak that rendered a juice plant inoperable, but did not cause any physical alteration to the plant.  The court found that the insured had suffered "direct physical loss or damage."  2014 WL 6675934, at *5.  "While structural alteration provides the most obvious sign of physical damage, both New Jersey courts and the Third Circuit have also found that property can sustain physical loss or damage without experiencing structural alteration."  *Id.*

In *Murray*, the insured's home was adjacent to a house that was damaged by a rockslide, but the insured's home was not damaged.  However, the homes were uninhabitable because of the danger of additional rockslides.  The court held that the insureds had suffered a "loss" even though their property had not been physically harmed.  203 W.Va. at 493.  "Direct physical loss also may exist in the absence of structural damage to the insured property."  *Id.*

In *W. Fire Ins.*, the insured property suffered an infiltration of gasoline and gasoline vapors, making the building uninhabitable.  The insurer denied coverage, arguing that the building had suffered no "direct physical loss."  165 Colo. at 36.  The Colorado Supreme Court disagreed,

---

[14]   On the flip side, property can suffer "damage" without "loss."  In *Advance Cable Co., LLC v. Cincinnati Insurance Co.*, 788 F.3d 743 (7th Cir. 2015), the insured's roof was dented in a hail storm.  Even though the insured did not suffer a "loss" in the sense that there was a loss in value or functionality of the property, the claim was still covered because the dents were "damage" because they constituted a physical change to the roof.  *Id.* at 747.

[15]   *See also Studio 417*, 2020 WL 4692385, at *5 ("Other courts have similarly recognized that even absent a physical alteration, a physical loss may occur when the property is uninhabitable or unusable for its intended purpose.") (citing, *inter alia*, *Port Authority*, 311 F.3d at 236; *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:12-cv-04418 (WHW) (CLW), 2014 WL 6675934 (D.N.J. Nov. 25, 2014)); *Murray v. State Farm Fire & Cas. Co.*, 203 W. Va. 477, 493 (W. Va. 1998); *W. Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34, 38 (Colo. 1968); *Hughes v. Potomac Ins. Co. of D.C.*, 199 Cal. App. 2d 239, 248-49 (1962).

holding that there was a "direct physical loss" even though there was no physical alteration in the church building.  It found *Hughes* to be the most analogous authority.  In *Hughes*, a landslide left the insured's home on the precipice of a 30-foot cliff, but the home itself was undamaged.  199 Cal. App. 2d at 248-49.  The insurer denied coverage, claiming that the home had suffered no physical damage.  The California Court of Appeals rejected this position, holding:

> To accept appellant's interpretation of its policy would be to conclude that a building which has been overturned or which has been placed in such a position as to overhang a steep cliff has not been 'damaged' so long as its paint remains intact and its walls still adhere to one another.  Despite the fact that a 'dwelling building' might be rendered completely useless to its owners, appellant would deny that any loss or damage had occurred unless some tangible injury to the physical structure itself could be detected.  Common sense requires that a policy should not be so interpreted in the absence of a provision specifically limiting coverage in this manner.

*W. Fire Ins.*, 165 Colo. at 40-41 (quoting *Hughes*, 199 Cal. App. 2d at 248-49).

Further, in *Total Intermodal Services Inc. v. Travelers Property Casualty Co. of America*, No. CV 17-04908 (KSx), 2018 WL 3829767 (C.D. Cal. July 11, 2018), the insured picked up two containers of printing equipment at the Port of Los Angeles, but mistakenly marked one of the containers empty and it was shipped back to China.  For reasons that were disputed by the parties, the parts in the wayward container were ultimately destroyed.  2018 WL 3829767, at *1.  The insured argued that the claim was covered because the container was "lost" in that it was unrecoverable from China.  Travelers insisted that the policy required the property to be physically damaged.  "Thus, the parties dispute whether the coverage for 'direct physical loss' applies when property is merely lost, or whether it also—or instead—requires that the property be physically damaged."  *Id.* at *3.  The court rejected Travelers' position because "the Coverage clause establishes the coverage and its plain language covering the 'loss of' property is irreconcilable with Travelers's position requiring damage."  *Id.* at *4.  The court distinguished *MRI Healthcare* and *Newman Myers*, concluding "[t]he Court therefore rejects Travelers's proposed construction.

- 13 -

Instead, the phrase 'loss of' includes the permanent dispossession of something," adding in a footnote "The Court recognizes that the same phrase in a different kind of insurance contract could mean something else, and that the issue here is simply whether the phrase 'loss of' *includes* physical dispossession in the absence of physical damage. The Court therefore uses the word 'includes' to make clear that its construction is non-limiting." *Id.* at *4 n.4 (emphasis in original).

Defendants cite to certain recently decided COVID-19-related business interruption cases which held that "loss" requires physical alteration of the property. These decisions are not binding on this Court[16] and relied on the previously discussed, improperly decided opinion in *Roundabout*. In *10012 Holdings*, the court improperly interpreted "direct physical loss of or damage to" property in the insured's policy as requiring physical damage. The primary authority relied upon in *10012 Holdings* is *Roundabout Theatre*, which is, as noted *supra*, contrary to decisions from the New York Court of Appeals holding that surplusage should be avoided, *see, e.g.*, *Burlington*, 29 N.Y.3d at 323, and that words separated by the conjunctive "or" are to be interpreted as having different referents. *Propis*, 112 A.D.2d at 736-37. It is also contrary to *Port Authority*, which states that "loss" is different from damage and does not require physical alteration of the property. 311 F.3d at 236.

In *Michael Cetta*, the insured's policy covered "direct physical loss of or damage to" property. The court incorrectly found that "direct physical loss" of property required some

---

[16]   *See, e.g.*, *Panayoty v. Annucci*, 898 F. Supp. 2d 469, 480 (N.D.N.Y. 2012) (declining to follow the Southern District of New York court's rulings on grounds that "the doctrine of *stare decisis* is not applicable to coordinate courts, *i.e.*, district courts located in different judicial districts. . . . At best, the prior district court ruling provides persuasive authority for the subsequent lateral court, but there is no precedent which states that a subsequent district court is in any way bound by a prior district court ruling[.]") (citing MOORE'S FEDERAL PRACTICE at §134.02[1][d] ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.")). *In re Northern Telecom Ltd. Sec. Litig.*, 42 F. Supp. 2d 234, 239 (S.D.N.Y. 1998) ("This [law-of-the-case] principle is mandatory for the District Court when an appellate court has ruled on a matter of law. . . . *It is discretionary, however, for a court that is considering* whether to revisit its own decisions or *the decisions of a sister court*.") (internal citations omitted) (collecting cases).

physical alteration of the property.  *Id.* at 11-15.  This holding was incorrect for the same reasons that *10012 Holdings* was incorrect.

### 3.      Plaintiff Suffered a "Civil Authority" Loss

Defendants argue that Plaintiff has also not suffered a loss under its "civil authority" coverage.  Br. at 9-10.  As a starting point, if Plaintiff suffered "physical loss of or damage to" its property as a result of having to curtail operations as a result of the Closure Orders, then it is unnecessary to explore whether they have a separate claim under their Civil Authority coverage. That loss would be insured under the regular business interruption coverage.

Defendants argue that Plaintiff fails to establish both that there was "damage to property other than [its own]" and that the "action of civil authority [ ] prohibit[ed] access[.]"  Br. at 10. For the reasons set forth above, and putting aside that it would be improper on a Rule 12(b)(6) motion to find as a matter of law that no businesses in the proximity of Plaintiff's business suffered a physical loss of or damage to their properties, if the Closure Orders caused physical loss of Plaintiff's property, they likewise caused physical loss to property in the vicinity of Plaintiff's property.

Further, Plaintiff's Business Income and Extra Expense losses were caused by the Closure Orders, not coronavirus.  An action taken in advance to prevent a loss by an excluded peril is not caused by the excluded peril.  *See Newman Myers*, 17 F. Supp. 3d at 333-34 (losses caused by shutdown of power grid as a precaution against flooding were not caused by flood).  In *United Air Lines, Inc. v. Insurance Co. of State of Pennsylvania*, 439 F.3d 128 (2d Cir. 2006), United Airlines sought business interruption coverage for the shutdown of operations of Washington National Airport under its terrorism coverage for losses after the 9/11 terrorist attacks, based upon the crash of the airplane into the Pentagon, which is in close proximity to that airport.  Coverage was denied because the orders shutting down  Washington National Airport until certain safety measures were

taken were issued to prevent future terrorism, not as a result of physical damage to the Pentagon by terrorists. *Id.* at 133-35.  In short, the government orders to prevent terrorism in the future was a different cause than a terrorist attack.  *See also Bros., Inc. v Liberty Mut. Fire Ins. Co.*, 268 A.2d 611, 613 (D.C. 1970) (business interruption losses suffered by liquor store caused by 5:30 p.m. curfew ordered to prevent rioting, not by "riot" or "commotion").

Additionally, Plaintiff's worship center suffered a "direct physical loss" because the Closure Orders restricted Plaintiff's use of the property by eliminating and then limiting gatherings in this area.  *See* Governor Cuomo's Executive Order 202.32.  Under the Policy, "direct physical loss" is a "Covered Cause of Loss," *see supra* at 2, and Plaintiff's worship center is a "property other than property at the described premises" under the civil authority provision.  Moreover, the Closure Orders "prohibit[ed] access to the described premises," and therefore Plaintiff's claims squarely fall under the civil authority provision.  Defs.' Ex. A at WESCO_000154.

### D.     Plaintiff's Claims Are Not Excluded

Defendants argue that regardless of whether Plaintiff suffered physical loss of or damage to its property, Plaintiff's losses are still excluded under various exclusions in the Policy. Defendants argue that this exclusion bars Plaintiff's claims because, ultimately, the events that put into motion the Closure Orders were the spread of coronavirus.  The exclusion does not apply to the instant situation, but even if it did, the cause of Plaintiff's loss was the Closure Orders, not coronavirus.

### 1.     Defendants' Virus Exclusion Does Not Apply to Plaintiff's Claim

In interpreting an insurance policy, a phrase must be construed within the context of the clause in which it's found and in light of the purpose to be accomplished by the clause.  *In re Vanguard Ins. Co. (Polchlopek)*, 18 N.Y.2d 376, 380 (1966); *see also CT Inv. Mgmt. Co. v. Chartis*

*Specialty Ins. Co.*, 9 N.Y.S.3d 220, 224 (1st Dep't 2015) ("Further, settled law requires that the terms of a contract be read in context[.]"). "As particularly relevant in the insurance world—where scriveners often use series of similar words and phrases as the means of reaching or ensuring a particular goal—'words of a feather flock together.'" *Gil v. Clara Maass Med. Ctr.*, 450 N.J. Super. 368, 386 (App. Div. 2017).

The virus exclusion excludes losses caused by "[a]ny virus, bacterium or microorganism that induces or is capable of inducing physical distress, illness or disease," but also cross-references the fungus/wet rot/dry rot exclusion. Defs.' Ex. A at WESCO_00171. Reading the words of the virus exclusion in context and in relation to other words in the policy, the virus exclusion properly read applies to infestations of an illness-causing microorganism at the insured's property, since the only way that fungus, wet rot or dry rot could cause harm to an insured's property is by some infestation of the property.

This reading is all the more apparent when considered in the context of the coverage and exclusions in the standard policy forms that the virus and fungus/rot endorsements were modifying. The regular policy form excludes losses caused by the "[p]resence, growth, proliferation, spread or any activity of 'fungus', wet or dry rot or bacteria[.]" Defs.' Ex. A at WESCO_000064. It also provides coverage for losses caused by fungus/rot/bacteria caused by stated perils to pay for the cost of removal of the fungus/rot/virus/bacteria, to tear out or replace parts of the property to get access to the fungus/rot/virus/bacteria, and the cost of testing for fungus/rot/bacteria/virus if there is a reason to believe any of those contaminants were present. Defs.' Ex. A at WESCO_000180. This coverage, which is modified by the virus exclusion endorsement, plainly indicates that the policy anticipated some contamination of the property by bacteria or a virus.

- 17 -

Here, however, Plaintiff's property was not contaminated by the coronavirus. Plaintiff's claimed loss is not for decontaminating its premises as a result of a coronavirus infestation. It did not close as a result of coronavirus contamination at the premises. No one became sick with COVID-19 as a result of exposure at Plaintiff's premises. Given the construction rules that exclusions are to be narrowly construed and the wording of the exclusion, which is directed at losses resulting from viral contamination, Defendants' virus exclusion does not apply to Plaintiff's loss.

At the very least, the virus exclusion is ambiguous as applied to the current COVID-19 pandemic. In *Urogynecology Specialist of Florida LLC v. Sentinel Insurance Co.*, No. 6:20-cv-1174-Orl-22EJK, 2020 WL 5939172 (M.D. Fla. Sept. 24, 2020), the court found that a similar virus exclusion did not "unambiguously and necessarily exclude[] Plaintiff's losses." *Id.* at *4. There, the virus exclusion stated that "Sentinel will not pay for loss or damage caused directly or indirectly by the presence, growth, proliferation, spread, or any activity of 'fungi, wet rot, dry rot, bacteria or virus.'" *Id.* The court noted that the inclusion of other pollutants, such as fungi, wet rot and dry rot did not logically align with the insurer's application of the exclusion to the COVID-19 pandemic. "Denying coverage for losses stemming from COVID-19, however, does not logically align with the grouping of the virus exclusion with other pollutants such that the Policy necessarily anticipated and intended to deny coverage for these kinds of business losses." *Id.*

Under New York law, "'such proof is generally admissible to explain ambiguities'" under the parole evidence rule. *Mooney v. AXA Advisors, L.L.C.*, 19 F. Supp. 3d 486, 506 (S.D.N.Y. 2014) (quoting *67 Wall St. Co. v. Franklin Nat'l Bank*, 37 N.Y.2d 245, 248-49 (1975)).

> Evidence to explain an ambiguity, establish a custom, or show the meaning of technical terms, and the like, is not regarded as an exception to the general rule, because it does not contradict or vary the written instrument, but simply places the court in the position of the parties when they made the contract, and enables it to

> appreciate the force of the words they used in reducing it to writing.  It is received
> where doubt arises upon the face of the instrument as to its meaning, not to enable
> the court to hear what the parties said, but to enable it to understand what they wrote
> as they understood it at the time.

*Id.* (quoting *Murdock v. Gould*, 193 N.Y. 369, 375 (1908)).  Accordingly, the Court can resolve

the ambiguity in the virus exclusion by considering the ISO 2006 circular relating to the approval

of the endorsement.[17]  *See* Ex. 1, ISO Circular LI-CF-2006-175.  According to ISO's circular, the

virus exclusion was envisioned as a gap filler for instances where pollution exclusions were not

being applied to ***contamination*** from viral or bacterial sources.  *Id.* at 5.  The examples described

in the circular specifically describe the spread of disease by the presence of disease-causing agents

on interior building surfaces or the surfaces of personal property.  *Id*.  Accordingly, the virus

exclusion endorsement cannot apply where, as here, there is no allegation that there was a virus

infestation in Plaintiff's property.

### 2.      Coronavirus Was Not the Cause of Plaintiff's Loss

Even if the virus exclusion applies, Plaintiff has alleged that the efficient proximate cause

of their loss was the Closure Orders, not coronavirus.  ¶41.  New York follows the majority rule

with respect to losses that are the result of an excluded peril and a covered peril.  In that instance,

the loss will be covered if the "proximate, efficient and dominant cause" of the loss is a covered

peril.  *See, e.g.*, *Greenberg v. Privilege Underwriters Reciprocal Exch.*, 93 N.Y.S.3d 686, 688 (2d

Dep't 2019) (citing *Album Realty Corp. v. Am. Home Assurance Co.*, 80 N.Y.2d 1008, 1010

(1992)).  To determine causation, the court must look to "the 'efficient or dominant cause of the

loss,' not the event that 'merely set the stage for that later event[.]'"  *Gravino v. Allstate Ins. Co.*,

---

[17]    Courts have used other ISO Circulars—and the evolution of policy language they reflect—to help interpret the insurer's intended scope of coverage and exceptions.  *See Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C.*, 226 N.J. 403, 429 (N.J. 2016); *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 884 (Fla. 2007).

902 N.Y.S.2d 725, 726 (4th Dep't 2010).  Rather, "'[o]nly the most direct and obvious [efficient] cause should be looked to for purposes of the exclusionary clause.'"  *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 48 (2d Cir. 2006).  "When the court interprets an insurance policy excluding from coverage any injuries 'caused by' a certain class of conditions, the causation inquiry stops at the efficient physical cause of the loss; it does not trace events back to their metaphysical beginnings."  *Id.*  The insurer must prove that a loss "caused by or resulting from" an excluded peril is the proximate cause of the loss.  *Home Ins. Co. v. Am. Ins. Co.*, 537 N.Y.S.2d 516, 517 (1st Dep't 1989).

For example, in *Album Realty*, a sprinkler head in the insured's basement froze and burst, which, in turn, flooded the sub-basement causing damage to mechanical and electrical equipment in the sub-basement and structural damage to the building.  80 N.Y.2d at 1009.  The insured's policy excluded losses caused by freezing, but covered water damage.  The Court of Appeals held that, even though the damage could be traced back to freezing and would not have occurred in the absence of freezing, the efficient proximate cause of the loss was water damage, inasmuch as that was the "most direct and obvious cause" of the loss.  *Id.*

While the existence of coronavirus may have been the event that got the snowball rolling, Plaintiff's losses were caused by the Closure Orders, not by coronavirus, because Plaintiff's business was forced to severely cut back as a direct result of the Closure Orders, in the same way that the *Album Realty* plaintiff's losses were caused by water damage, not freezing.  As is explained above, an action taken to prevent future harm from an excluded peril is not an excluded peril.  Since Plaintiff's losses were caused by a covered peril, not an excluded peril, they are covered.

## IV.   CONCLUSION

For the reasons set forth herein, Defendants' motion to dismiss should be denied.

- 20 -

DATED:  January 25, 2021                 Respectfully submitted,

                                                    ROBBINS GELLER RUDMAN
                                                        & DOWD LLP
                                                   SAMUEL H. RUDMAN
                                                 MARK S. REICH

                                                 */s/ Mark S. Reich*
                          ———————————————————
                                         MARK S. REICH

                                  58 South Service Road, Suite 200
                                  Melville, NY  11747
                                  Telephone:  631/367-7100
                                  631/367-1173 (fax)
                                  srudman@rgrdlaw.com
                                  mreich@rgrdlaw.com

                                  ROBBINS GELLER RUDMAN
                                    & DOWD LLP
                                  PAUL J. GELLER
                                  STUART A. DAVIDSON
                                  120 East Palmetto Park Road, Suite 500
                                  Boca Raton, FL  33432
                                  Telephone:  561/750-3000
                                  561/750-3364 (fax)
                                  pgeller@rgrdlaw.com
                                  sdavidson@rgrdlaw.com

                                  CARELLA, BYRNE, CECCHI,
                                    OLSTEIN, BRODY & AGNELLO, P.C.
                                  JAMES E. CECCHI
                                  LINDSEY H. TAYLOR
                                  5 Becker Farm Road
                                  Roseland, NJ  07068
                                  Telephone:  973/994-1700
                                  973/994-1744 (fax)
                                  jcecchi@carellabyrne.com
                                  ltaylor@carellabyrne.com

SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
STEPHEN A. WEISS
55 Challenger Road, 6th Floor,
Ridgefield Park, NJ 07660
Telephone:  973/639-9100
973/584-9393 (fax)
cseeger@seegerweiss.com
sweiss@seegerweiss.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Mark S. Reich, certify that on January 25, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system for filing.  Based on the records on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the ECF registrants of record.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 25th day of January, 2021, at Melville, New York.



MARK S. REICH